[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 14, 2006
THOMAS K. KAHN
CLERK

No. 05-14927
Non-Argument Calendar

_____

D.C. Docket  No. 03-00157-CV-WDO-5

DONYA MITCHELL,

                                                              Plaintiff-Appellant,

versus

GENE POPE,
individually and officially,
MICHAEL OVERBEY,
individually and officially,
BUTTS COUNTY SHERIFF'S DEPARTMENT,

                                                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(July 14, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Donya Mitchell, a female formerly employed by the Butts County Sheriff's Department as a Deputy Sheriff and Investigator, appeals the grant of summary judgment in favor of Gene Pope, Sheriff of Butts County, Georgia, and Michael Overbey, a Major in the Butts County Sheriff's Department, in her action alleging sexual harassment, in violation of Title VII, 42 U.S.C. § 2000e-2, and the Equal Protection Clause of the Fourteenth Amendment, under 42 U.S.C. § 1983.[1]  No reversible error has been shown; we affirm.

We review a district court's grant of summary judgment de novo, viewing the facts--as supported by the evidence in the record--and reasonable inferences from those facts in the light most favorable to the nonmoving party.  Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004).  Summary judgment is proper where no genuine issue of material fact exists.  Id.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).

---

[1]The district court also granted summary judgment in favor of Defendants on Plaintiff's claims arising under 42 U.S.C. § 1985, the First Amendment, the Americans with Disabilities Act, 42 U.S.C. § 12112, the Equal Pay Act, 29 U.S.C. § 206(d), and Georgia state law.  Plaintiff makes no argument about these claims on appeal: they are abandoned.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

To prove sexual harassment under Title VII, a plaintiff must show, among other things, that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004). "Sexual harassment in the workplace can alter the terms and conditions of employment in either of two ways." Id. at 1245. First, if the plaintiff proves "that the harassment culminated in a 'tangible employment action' against her." Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (111th Cir. 2006). Second, if the plaintiff shows hostile work environment harassment: where "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 114 S.Ct. 367, 370 (1993) (internal quotation marks and citations omitted).

Plaintiff proceeds under both theories. She argues that Overbey's acts constituted actionable hostile work environment sexual harassment under Title VII and § 1983.[2] And she also contends that Overbey's acts resulted in her constructive discharge and in the alteration of her job duties; she, thus, maintains

---

[2]We evaluate Plaintiff's § 1983 claims together with her Title VII claims. See Hardin v. Stinchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982) (when § 1983 used as parallel remedy for Title VII violation, elements of the two causes of action are the same).

3

that she suffered a tangible employment action based on Overbey's sexual

harassment.

We reject Plaintiff's hostile work environment claim. In analyzing a hostile

work environment claim, we consider (1) the frequency of the conduct; (2) the

severity of the conduct; (3) whether the conduct was physically threatening or

humiliating, or a mere offensive utterance; and (4) whether the conduct

unreasonably interfered with the employee's job performance. Mendoza v.

Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).

Overbey's conduct was not that frequent. Plaintiff began working in the

Criminal Investigation Division, under Overbey's supervision, in January 1998:

she resigned in July 2002. During those 4 years, Plaintiff points to 16 specific

instances of offensive conduct by Overbey.[3] Of these instances, most involved

---

[3]Plaintiff contends that Overbey: (1) tried to kiss her after the 1999 Sheriff's Department Christmas party and called her a "frigid bitch" when she refused, (2) showed up at places Plaintiff was "staking out" in December 1999 and told her "you must be working out" and "you sure do look fine," (3) appeared several times in her driveway in January 2000, once drunk, when he told Plaintiff's son that he loved Plaintiff, (4) suggested she wear certain jeans and commented "your ass sure does look fine," (5) told her "you can just walk into the room and I'd get an erection," (6) stood on his tiptoes to look down her shirt, (7) rubbed up against her, whispered in her ear, and put his arm across her chest, (8) chased her around the CID office, (9) once picked her up over his head in the CID office, (10) asked her over the Sheriff's Department telephones if she was dressed or naked, (11) opened the door to the women's bathroom and turned the lights off and on when Plaintiff was inside, (12) simulated "humping" another female employee with that employee's consent, (13) made sexually derogatory remarks and gestures about a female magistrate judge, and (14) referred to Sheriff Pope as a "big eared pencil dick motherfucker." In March 2000, Plaintiff and Overbey attended a conference in Alabama. Overbey told Plaintiff that the hotel had made a mistake and that they would have to share a room. Overbey slept on the floor. The next night, after Overbey got his

4

"offensive utterances." Only three times did Overbey touch her or attempt to touch her: when he tried to kiss her, when he lifted her over his head, and when he rubbed up against her and reached across her chest. And Plaintiff did not assert that she felt threatened by Overbey's conduct. In addition, much of Overbey's conduct involved horseplay; and some was not sex-based. Although Overbey's reprehensible behavior only can be described as crass and juvenile, we accept that this behavior--given its relative infrequency--is not the kind of "severe" harassment necessary for liability to attach under Title VII. Overbey's conduct is more comparable to the conduct in Gupta v. Florida Bd. of Regents, 212 F.3d 571, 584-86 (11th Cir. 2000), and in Mendoza, 195 F.3d at 1247, which we concluded was not objectively severe or pervasive.[4] And no evidence exists that Overbey's

own room, he tried to convince Plaintiff to go to the hotel hot tub with him and other conventioneers. He called her a "frigid bitch" when she refused; when she confronted him the next morning and threatened to tell the Sheriff if Overbey did not leave the conference, Overbey cried, promised he would be "good," and left. And Plaintiff explained that, in June 2002, before she was scheduled to work security at a private golf tournament given by a strip club owner, Overbey told her and other officers about another golf tournament hosted by this owner where strippers acted as caddies. Overbey said that the owner directed the strippers to place golf balls into their vaginas and to squirt them onto the green.

[4] In Mendoza, the alleged harasser said "I'm getting fired up," rubbed his hip against the plaintiff's hip while touching her shoulder and smiling, twice made a sniffing sound while looking at the plaintiff's groin area and once sniffing without looking at her groin, and constantly following and staring at Mendoza in a "very obvious fashion." See 195 F.3d at 1247. In Gupta, the alleged harasser suggested lunch at Hooters, said the plaintiff was "looking very beautiful," called her at home, unbuckled his pants and tucked in his shirt in front of her, stared at her twice, touched her ring and kept asking her to lunch, placed his hand on her knee, and touched the hem of her dress. See 212 F.3d at 584-86.

5

behavior unreasonably interfered with Plaintiff's job performance. To the contrary, the evidence indicates that Plaintiff's health problems were the greatest hindrance to her job performance and led to her ultimate confrontation with Pope and her subsequent resignation. In short, Plaintiff has not shown a claim of actionable hostile work environment under Title VII.[5]

And we reject Plaintiff's claim that Overbey's behavior culminated in a tangible employment action. Plaintiff asserts that she changed her work schedule several times to avoid Overbey, that she had her desk moved to avoid Overbey's stares, that Overbey forbade her from using a spare office for her polygraph equipment, and that Overbey gave her two assignments normally not given to a CID officer. These things do not rise to the level of tangible employment actions. See Cotton, 434 F.3d at 1231 (stating that tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

---

[5]We affirm the grant of summary judgment on Plaintiff's hostile work environment claims, so we need not address Plaintiff's arguments that Sheriff Pope and Overbey (1) failed to satisfy their burden on the affirmative defense to liability under Faragher v. City of Boca Raton, 118 S.Ct. 2275 (1998), and Burlington Indus., Inc. v. Ellerth, 118 S.Ct. 2257 (1998), and (2) were entitled to Eleventh Amendment immunity and qualified immunity on Plaintiff's § 1983 claims.

Plaintiff also points to her resignation, which she claims was a constructive discharge, and, thus, a tangible employment action. We doubt that Plaintiff could show that her working environment was so intolerable that resignation was appropriate where she has failed to demonstrate that Overbey's behavior was severe or pervasive enough to alter her work conditions. See Pennsylvania State Police v. Suders, 124 S.Ct. 2342, 2347 (2004) (to establish constructive discharge, plaintiff must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response). In addition, although Plaintiff believed that Sheriff Pope would not be receptive to complaints about Overbey's behavior, Plaintiff did not provide Sheriff Pope an opportunity to remedy the situation: she never formally complained in writing about Overbey and never complained orally to Sheriff Pope. See Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996) (constructive discharge generally not viable if employer not given sufficient time to remedy the situation).

And Plaintiff's constructive discharge claim fails because she failed to demonstrate a causal link between her resignation and the alleged harassment. See Cotton, 434 F.3d at 1231. Plaintiff resigned after Sheriff Pope warned her that she would be suspended or terminated if she took more leave after returning from Family and Medical Leave Act ("FMLA") leave. Plaintiff stated in her deposition

7

"I resigned the last day of my FMLA, in order to keep my COBRA[6] coverage."
The record demonstrates that Plaintiff resigned due to her health problems, a dispute over her leave time, and the concern that she would lose her insurance if terminated, not because of Overbey's behavior. We, thus, reject Plaintiff's constructive discharge claim.

In sum, we affirm the district court's grant of summary judgment in favor of Defendants.

AFFIRMED.

---

[6] The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") gives workers who lose their health benefits the right to choose to continue health benefits provided by their health plan for a limited time under certain circumstances. See 29 U.S.C. § 1161.