[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15042
Non-Argument Calendar
_____

D. C. Docket No. 06-60371-CV-PCH

JANICE BURGOS,

Plaintiff-Appellant,

versus

JANET NAPOLITANO,
as Director of the United States
Department of Homeland Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 2, 2009)

Before DUBINA, Chief Judge, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Janice Burgos appeals from the district court's grant of summary judgment in favor of the Department of Homeland Security ("DHS") in her retaliation suit under the Rehabilitation Act (the "Act") based on its failure to contact her physician before rendering a final determination on her request for a job transfer, in breach of a settlement agreement, which ultimately led to her refusal to accept DHS's offer for a job reassignment. Specifically, Burgos argues that the district court violated our mandate set forth in *Burgos v. Chertoff*, No. 07-12954 (11th Cir. April 23, 2008) (unpublished) (*Burgos I*), because, instead of making specific findings supporting its previous determination that she generally established a *prima facie* retaliation case, it found that she did not establish a *prima face* case. Additionally, she argues that the district court erred as to the merits of her retaliation claim when it found, in the alternative, that she failed to show that the proffered reasons for taking the disputed action were pretextual.

A.

We have plenary review over the district court's interpretation of our mandate. *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.*, 943 F.2d 1511, 1517 (11th Cir. 1991). A trial court "may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." *Piambino v. Bailey*, 757 F.2d 1112,

2

1119 (11th Cir. 1985).

A district court abuses its discretion if it fails to apply the law of the case doctrine. *United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996). However, we review the district court's application of the law of the case doctrine *de novo*. *United States v. Bobo*, 419 F.3d 1264, 1267 (11th Cir. 2005). Under the law of the case doctrine, both the district court and this court are bound by findings of fact and conclusions of law we made on a prior appeal of the same case unless a subsequent trial produces substantially different evidence, controlling authority has since made contrary decisions of law applicable to an issue, or the prior decision was clearly erroneous and would work manifest injustice. *Jackson v. State of Alabama State Tenure Comm'n,* 405 F.3d 1276, 1283 (11th Cir. 2005). The law of the case doctrine bars consideration of only those legal issues that we actually, or by necessary implication, decided, and the first step in the analysis is to identify the legal issues that we previously decided. *Id.* However, when we vacate a decision, the law of the case doctrine does not apply to the issues on remand. *See, e.g., Tamayo*, 80 F.3d at 1521 (noting that issues *outside* the scope of the limited mandate are precluded by law of the case doctrine) (emphasis added).

Here, we conclude from the record that the district court did not violate our mandate because it made specific findings as to the materially-adverse and causal-

3

relationship prongs of a *prima facie* case, and the court's findings were otherwise consistent with our directions. Additionally, in *Burgos I*, we did not make any determinations of our own as to whether Burgos established a *prima facie* case, and, as a result of our vacatur, the district court was not bound by its earlier finding that Burgos generally established a *prima facie* case of retaliation. Consequently, the district court did not violate the law of the case doctrine as to that issue.

B.

We review *de novo* the district court's grant of summary judgment, viewing all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Burton v. Tampa Housing Authority*, 271 F.3d 1274, 1276-77 (11th Cir. 2001). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

The Rehabilitation Act incorporates the anti-retaliation provision from § 12203(a) of the Americans with Disabilities Act ("ADA"). 29 U.S.C. §§ 791(g), 793(d), 794(d); *see Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999) (stating that the standard for determining liability under the Act is the same as

4

under ADA, in the context of a discrimination claim). Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). This anti-retaliation provision is similar to Title VII's prohibition on retaliation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, we assess retaliation claims pursuant to the Act under the same framework used for Title VII retaliation claims. *See id.*; *see also Ellis v. England*, 432 F.3d 1321, 1323-24 (11th Cir. 2005) (discussing the administrative procedures for a federal employee raising disability claims under the Rehabilitation Act).

When considering a motion for summary judgment based on retaliation which involves circumstantial evidence, we analyze the case using the shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999) (holding that the *McDonnell Douglas* analytic framework applies to retaliation claims). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. Once a plaintiff has established a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason

5

for the challenged employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer proffers such an explanation, the burden shifts back to the plaintiff to prove that the defendant's explanation is merely a pretext. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002).

To establish a *prima facie* case of retaliation, a plaintiff may show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was some causal relationship between the two events. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260-61 (11th Cir. 2001) (ADA context); *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir.1997) (Title VII context). The filing of an EEOC claim is a "statutorily protected activity." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (2008).

Regarding an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). In *Burlington Northern*, the Supreme Court stated that "[t]he anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that *produces an injury or harm*." *Id.* at 67, 126 S. Ct. at 2414 (emphasis added). The acts must be material and significant and not

6

trivial. *Id.* at 68, 126 S. Ct. at 2415; *see also Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (noting that *Burlington Northern* "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered"). In addition, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68, 126 S. Ct. at 2415 (quotation omitted). Further, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69, 126 S. Ct. at 2415.

In *Burlington Northern*, the Supreme Court noted that not every job reassignment is automatically actionable because "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances,'" as some jobs may be more desirable than others. *Id.* at 71, 126 S. Ct. 2417 (citation omitted); *see also Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009) (holding that the plaintiff must provide evidence that the employer reassigned the plaintiff to a less desirable position to punish the plaintiff for exercising her statutory rights).

In *Crawford*, we held that a plaintiff suffered a materially adverse action in the form of an unfavorable performance review that affected her eligibility for a merit pay increase after she complained of racial discrimination because the employer's conduct "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." 529 F.3d at 974. Additionally, the Tenth Circuit has held that "the fact that an employee continues to be undeterred in his or her pursuit of a remedy, . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable." *Somoza v. University of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008).

Regarding the causal-relationship prong, we construe this element broadly so that a plaintiff simply has to demonstrate that the protected activity and the adverse action are not completely unrelated. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). A plaintiff satisfies this element if she provides sufficient evidence that her employer had knowledge of the protected expression and "that there was a close temporal proximity between this awareness and the adverse action." *Id.* (quotations and ellipsis omitted).

A "close temporal proximity" between the employee's protected activity and the adverse action may be sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *Brungart v. BellSouth Telecomms.,*

*Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). While we have not stated exactly how close the temporal proximity must be, we have acknowledged that the "mere temporal proximity between knowledge of protected activity and an adverse action must be 'very close.'" *Higdon*, 393 F.3d at 1220 (quotations and ellipsis omitted). Furthermore, "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.* at 1220 (holding that, by itself, three months was insufficient to prove causation, but noting a previous holding that one month is "not too protracted").

Here, there is no doubt that Burgos's filing of an EEOC claim was a "statutorily protected activity." We conclude from the record, however, that DHS's failure to consult Burgos's physician was not a materially adverse action because the evidence shows that Burgos was not deterred in reinstating her EEOC claim. Additionally, Burgos did not demonstrate that she suffered any specific harm from DHS's failure to consult directly with her physician, as the evidence demonstrates that DHS's evaluation of her fitness for duty was adequate and its ultimate recommendation would not have changed had it consulted with Burgos's doctor. The evidence also shows that the job reassignment offered to Burgos was not less desirable than her current position, so any harm that she suffered was the result of

9

her own rejection of the reassignment, not DHS's failure to consult with her physician. As a result, no reasonable employee would have found DHS's failure to consult with her physician a materially adverse action.

Even assuming *arguendo* that Burgos suffered a materially adverse action, she failed to establish that DHS's failure was in retaliation for filing her EEOC claim. As held above, there is no evidence that DHS offered to reassign Burgos to punish her for making an EEOC claim. The six-month delay between the filing of her EEOC claim, in January 2004, and DHS's breach of the settlement agreement, approximately in June 2004, is a substantial delay and, without more, is insufficient to support an inference of causation. Consequently, her claim fails as a matter of law and, accordingly, we affirm the district court's grant of summary judgment.[1]

**AFFIRMED.**

---

[1] Because we conclude that Burgos did not establish a *prima facie* case of retaliation, we do not address whether DHS proffered a legitimate nonretaliatory reason for the challenged employment action.