**Katrina KAVANAUGH, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**Case No. 09–CV–21666–TURNOFF.**

United States District Court,
S.D. Florida.

March 28, 2011.

Stanley Kiszkiel, Pembroke Pines, FL, for Plaintiff/Defendant.

William X. Candela, Miami, FL, for Defendant.

### CONSENT

WILLIAM C. TURNOFF, United States Magistrate Judge.

### ORDER ON SUMMARY JUDGMENT

**THIS CAUSE** came before the Court upon Defendant's Motion for Summary Judgment. **[DE 36].** This case was referred to the undersigned by the Honor-

able Joan A. Lenard, United States District Judge for the Southern District of Florida, for disposition of all matters pursuant to 28 U.S.C. § 636(c). **[DE 18].** A hearing on this motion was held on September 13, 2010. **[DE 60].** The Court has considered the written and oral arguments, the case file, the applicable law, and is otherwise duly advised in the premises.

### General Background

Plaintiff Officer Katrina Kavanaugh filed a three-count Complaint against Defendants Miami–Dade County and the Dade County Police Benevolent Association, on June 17, 2009, alleging violations of Title VII of the Civil Rights Act of 1964, ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 (2009).[1] **[DE 1].** Plaintiff alleged job discrimination based on sexual harassment and retaliation by Defendant Miami–Dade County.[2] In particular, Plaintiff alleged that, subsequent to her filing an internal complaint of sexual harassment against her Lieutenant, Alexander Bencomo, she was subjected to persistent, pervasive retaliation in the form of a hostile work environment by officers in the Miami–Dade County Police Department. As a result of the retaliation, on April 28, 2008, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), as well as with the Florida Commission on Human Relations ("FCHR"). The United States Department of Justice issued a Notice of Right to Sue letter on April 9, 2009. Plaintiff further alleged that the retaliation continued after she filed the EEOC charge.

---

1. The Dade County Police Benevolent Association was dismissed with prejudice from this action on August 11, 2010. **[DE 42].** As a result, Count III of the Complaint is no longer at issue.

2. Plaintiff has since abandoned her claim for sexual harassment against Defendant. Accordingly, because Count II of the Complaint is no longer at issue, the Court's analysis will focus only on Plaintiff's claim of retaliation, as set forth in Count I of the Complaint.

Defendant Miami–Dade County denied that any harassment or retaliation occurred and argued that Plaintiff could not establish a *prima facie* case of retaliation. Specifically, Defendant argued that Plaintiff could not pursue her retaliatory shift transfer claim because it was untimely, and notwithstanding, she could not establish the necessary causal nexus between the filing of her claim and the transfer. Further, Defendant argued that the five-day suspension stemming from the civilian complaint should not be considered because it was not raised in Plaintiff's EEOC charge, the Complaint or the Rule 26 disclosures. Finally, Defendant argued that the remaining events alleged by Plaintiff as retaliatory did not constitute adverse employment actions sufficient to establish a *prima facie* case of retaliation.

**Factual Background**

Plaintiff served as a police officer for the Miami–Dade Police Department ("MDPD") at the Kendall District Neighborhood Response Unit ("NRU"). On February 23, 2007, Plaintiff filed an internal sexual harassment complaint with the Police Compliance Bureau ("PCB"), against Lieutenant Alexander Bencomo.[3] PCB Sergeant Deborah Phillips conducted an investigation and added Plaintiff's Sergeant, Raul Gonzalez, as a subject of the investigation. Sgt. Phillips sustained Plaintiff's allegations in a report submitted to the Disposition Panel. The report was forwarded through the appropriate chain of command to determine the level of discipline warranted. Based upon a review of the Disposition Panel's Disciplinary Action Report, Sgt. Gonzalez was reprimanded, and Lt. Bencomo was terminated by Director Robert Parker. Lt. Bencomo was ultimately allowed to resign.

Plaintiff alleged that, since she filed the internal sexual harassment complaint against Lt. Bencomo, she was subjected to persistent, pervasive retaliation by fellow officers in the MDPD, including but not limited to superior officers both inside and outside her chain of command, resulting in a hostile work environment. **[DE 1].** Upon review of the record, Plaintiff set forth the following events or acts that she described as retaliatory.

Plaintiff alleged that, from February 2007 through January 2008, Sgt. Gonzalez repeatedly commented in her presence that, *inter alia*, he felt bad for Lt. Bencomo's wife and family, and that Lt. Bencomo's life had been ruined. Plaintiff complained to Lieutenant Adolfo Roiz. Although Sgt. Gonzalez remained as her supervisor, he was transferred to a different work area in January 2008.

According to Plaintiff, on or about March or April 2007, Sergeant Steadman Stahl, who was not in Plaintiff's chain of command, interfered with PCB's investigation of Lt. Bencomo by attempting to influence the testimony of witnesses. Plaintiff reported the incident to Sgt. Phillips who conducted a preliminary investigation confirming same. Sgt. Phillips' recommendation that a formal investigation be conducted was overruled by Major Donald Rifkin.

On January 20, 2007, Plaintiff and Lt. Bencomo participated in a Police Explorers car wash that raised the sum of $309.00. They were responsible for the funds which went missing. As a result, on April 3, 2007, Captain Michael Mouring filed a complaint with PCB against Lt.

---

**3.** It is unnecessary for the Court to address the underlying issue of Plaintiff's sexual harassment complaint against Lt. Bencomo. See *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 69, 126 S.Ct. 2405, 2416, 165 L.Ed.2d 345 (2006) (finding that the standard for judging Title VII harm does not require consideration of the underlying discrimination that led to the filing of the charge).

Bencomo and Plaintiff. Upon investigation, on or about August 2007, it was recommended that the allegations not be sustained. However, on or about May 2008, Victor Ramirez, Chief of the South Operations Division, sustained the allegations. Plaintiff was issued a record of counseling in connection therewith.

Plaintiff claimed that she was verbally counseled by Lt. Roiz as a result of allegations that she had discussed an open Internal Affairs investigation, but that instances of other officers discussing the same open investigation went ignored. On at least two occasions during the time period from April through October 2007, Officer Marianne Stahl informed Plaintiff that Crime Watch meetings had been cancelled or rescheduled. Although there was conflicting testimony regarding the frequency of the misleading statements ("weekly" vs. "twice"), Plaintiff missed only one meeting and was not disciplined or verbally counseled as a result thereof. Plaintiff complained to Sgt. Gonzalez about Officer Stahl's conduct. **[DE 37]** at Exh. 4.

From May 21, 2007, to July 6, 2007, Plaintiff, along with another officer, were temporarily assigned to the evening shift. The shift change resulted in a pay increase known as a "night differential." **[DE 37]** at Exh. 12. However, Plaintiff alleged that she was not able to receive overtime from an off-duty job that she usually earned when working the day shift.

On or about September 2007, Sgt. Eduardo Torres complained to Sgt. Gonzalez that Plaintiff's attire was inappropriate. A superior officer checked Plaintiff's attire and found it to be in compliance with the rules. Although Plaintiff was not disciplined, she alleged that she was subjected to weekly attire checks. Then, on or about October 2007, Sgt. Torres surveyed other officers as to whether Plaintiff had handled the Lt. Bencomo incident appropriately.

Plaintiff complained to Sgt. Gonzalez and Lt. Roiz, but no action was taken.

On or about January 2008, condoms were found littered about the trailer where Plaintiff worked. Plaintiff believed the incident was related to her deposition testimony in the Lt. Bencomo matter wherein she allegedly mentioned condoms. Plaintiff reported the incident to Major Michael A. Herrera. Upon investigation, no suspects were found.

On or about April 2008, Plaintiff allegedly learned through her new supervisor, Sgt. James Edwards, that Sgt. Torres called her offensive names on at least one occasion. Sgt. Torres was not in Plaintiff's chain of command. Plaintiff reported the matter to her superiors and confronted Sgt. Torres. In turn, Sgt. Torres complained about Plaintiff's conduct in confronting him. Plaintiff then claimed that she attempted to file a complaint with PCB against Sgt. Torres, but PCB refused to take her complaint. Plaintiff further alleged that, on April 7, 2008, someone broke into her police car and her husband's (also a police officer) car, which were parked in her driveway at home. Plaintiff filed a complaint and an investigation ensued. According to Plaintiff, the only items taken were documents pertaining to her sexual harassment complaint and documents substantiating her retaliation claims.

On May 3, 2008, while driving her private vehicle, Plaintiff conducted an off-duty traffic stop of a civilian, Lourdes Medina. **[DE 37]** at Exh. 22. Plaintiff claimed that Medina appeared to be driving while intoxicated, while Medina claimed that Plaintiff was upset because Medina had cut her off in traffic. After the traffic stop, Plaintiff proceeded to her home and dressed in her uniform. She left a message for her superior officer and drove in her squad car to Medina's house where she proceeded to issue three citations. *Id.* On May 9, 2008, Medina con-

tacted the police department and filed a complaint with respect to the traffic stop and the citations. *Id.* Upon initial investigation, the allegations were not sustained. Subsequently, Division Chief Victor Ramirez, Chief of the South Operations Division, sustained the allegations finding that, *inter alia,* Plaintiff violated the rules of procedure by allowing a driver suspected of being intoxicated to continue driving. As a result, Plaintiff was suspended for five days. However, the suspension was not served due to a settlement agreement between Plaintiff and the MDPD. [DE 37] at Exh. 23.

### Summary Judgment Standard

A movant is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)(2); See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). On a summary judgment motion, the record and all reasonable inferences are drawn in favor of the non-moving party, but they must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Advert.,* 57 F.3d 1317, 1323 (4th Cir.1995); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir.1998); *Morongell v. Miami–Dade County,* No. 07–22762–CIV, 2008 WL 4938421, at *2 (S.D.Fla. Nov. 18, 2008). The burden of proving the absence of material fact lies with the moving party. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. If met, the burden then shifts to the party opposing the motion to "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### Discussion

Defendant argued that it is entitled to summary judgment because Plaintiff is unable to establish a *prima facie* case of retaliation. Plaintiff alleged that, as a result of filing an internal sexual harassment complaint against her supervisor, she was subjected to a series of retaliatory actions resulting in a hostile work environment. According to Plaintiff, the hostile work environment qualified as an adverse action for purposes of establishing a *prima facie* case of retaliation. However, Defendant argued that the events alleged by Plaintiff as retaliatory harassment failed to qualify, individually or collectively, as adverse actions. Defendant addressed the events individually and argued that none were either material or would have dissuaded a reasonable worker from making a charge of discrimination. By the same token, if analyzed collectively, the events alleged by Plaintiff were not sufficiently severe or pervasive to alter the terms and conditions of employment or interfere with her job performance.

Upon conducting a thorough review of the record, the undersigned finds that the events alleged by Plaintiff fail to support a *prima facie* case of retaliation whether considered individually or collectively as part of a claim for hostile work environment. The Court will focus on the hostile work environment events upon which Plaintiff predicated the adverse action prong of her retaliation claim.

### Retaliation

■ Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* prohibits employers from taking retaliatory actions against employees for bringing or supporting claims of violations of the Act.[4] The pur-

---

4. Plaintiff also alleged violations of the Flori- da Civil Rights Act ("FCRA"), Fla. Stat.

pose behind this prohibition is to encourage the enforcement of the Act by protecting employees. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006). The Act does not protect against all retaliation, but only retaliation that produces injury or harm. *Id.*, at 67, 126 S.Ct. at 2415. The challenged conduct must be materially adverse in order to constitute actionable retaliation. *Id.* The Supreme Court stated that Title VII does not set forth a "general civility code for the American workplace." *Id.* at 68, 126 S.Ct. at 2415 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998)). In analyzing the challenged conduct, it stressed the importance of separating "significant from trivial harms." *Burlington*, 548 U.S. at 68, 126 S.Ct. at 2415. Further, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Employees who suffer retaliation under this statute are provided a remedy by filing a complaint with the EEOC. A plaintiff must exhaust the available administrative remedies prior to bringing suit under Title VII. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989). The EEOC may resolve the complaint or provide employees a right-to-sue letter allowing them to bring an action in federal court. A subsequent judicial complaint may encompass any kind of allegations related to the allegations contained in the underlying EEOC charge and growing out of such allegations during the pendency of the case before the EEOC. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970). The allegations should follow from the charge such that the EEOC would have uncovered them during its investigation. A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir.2004) (citations omitted). Given that the scope of the EEOC charge is to be liberally construed, the inquiry becomes whether the claims raised in the judicial complaint are related to or grow out of the allegations raised in the EEOC charge. *Id.*

In analyzing retaliation claims, courts employ the burden-shifting model set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff must establish a *prima facie* case by showing that (1) she engaged in activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Taylor v. Roche*, 196 Fed.Appx. 799, 802 (11 Cir.2006). Plaintiff bears the initial burden in a retaliation case. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burgos v. Napolitano*, 330 Fed.Appx. 187, 189 (11th Cir.2009) (citations omitted).

Both parties cited Eleventh Circuit case law regarding the standard to be applied in analyzing adverse employment actions. The seminal case in this respect is *Burlington*, 548 U.S. 53, 126 S.Ct. 2405. Prior to *Burlington*, an employee could general-

§ 760.10 (2009), Title VII and the FCRA follow the same analysis. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.") (citations omitted); *See also Masso v. Miami–Dade County*, 465 F.Supp.2d 1260, 1263, fn. 1 (S.D.Fla.2006).

ly establish an adverse employment action by showing an "ultimate employment action," such as termination or demotion, or a "substantial employment action," such as a change to the terms and conditions of employment. *See, e.g., Freytes–Torres v. City of Sanford,* 270 Fed.Appx. 885, 893 (11th Cir.2008). After *Burlington,* to establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington,* 548 U.S. at 68, 126 S.Ct. at 2415 (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C.Cir.2006) (citations omitted)).

Plaintiff's burden to establish causality is low. Plaintiff need simply show "that the protected activity and the adverse action are not completely unrelated." *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1457 (11th Cir.1998) (citations omitted); *See also, Davis v. Coca–Cola Bottling Co.,* 516 F.3d 955, 978, fn. 52 (11th Cir.2008); *Burgos,* 330 Fed.Appx. at 190 ("we construe this element broadly so that a plaintiff simply has to demonstrate that the protected activity and the adverse action are not completely unrelated"). However, the acts must be material to be considered. *See Burlington,* 548 U.S. at 67–68, 126 S.Ct. at 2414–15 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.... We speak of *material* adversity because we believe it is important to separate significant from trivial harms") (emphasis in original).

Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer who must proffer a legitimate, nonretaliatory reason for the adverse action. *Crawford v. City of Fairburn, Ga.,* 482 F.3d 1305 (11th Cir.2007). If the employer meets that burden, the plaintiff must then show, by a preponderance of the evidence, that the proffered reason is merely a pretext for retaliation. *Sierminski v. Transouth Financial Corp.,* 216 F.3d 945, 950 (11th Cir.2000).

In the instant case, to warrant summary judgment, Defendant must show that the acts described by Plaintiff were (1) immaterial, insignificant, and trivial; and (2) would not have "dissuade[d] a reasonable [officer] from making or supporting a charge of discrimination." *Burlington,* 548 U.S. at 57, 126 S.Ct. at 2409; *See also, Burgos–Stefanelli v. Napolitano,* No. 09–60118–CIV, 2010 WL 785802, at *9 (S.D.Fla. Mar. 5, 2010) (finding that in establishing an adverse action plaintiff was required to show a material and significant employment act that could have dissuaded a reasonable worker from making a discrimination charge.) (citations omitted).

### *Prima Facie* Case Under *McDonnell Douglas*

The first element in the *McDonnell Douglas* framework is not in dispute. Plaintiff engaged in a protected activity by filing an internal sexual harassment complaint on February 23, 2007. The focus is on whether Plaintiff suffered an adverse employment action when she was subjected to an allegedly hostile work environment in retaliation for the filing of her EEOC sexual harassment complaint.

As stated *supra,* Plaintiff predicated her retaliation claim upon a hostile work environment. She argued that the alleged individual retaliatory acts, when viewed in conjunction with each other, amounted to a hostile work environment, which, in turn, constituted an adverse employment action. Defendant argued that none of the events alleged by Plaintiff constituted adverse employment actions to support a *prima facie* case of retaliation. Although the

Eleventh Circuit has not explicitly recognized a retaliation claim based on a hostile work environment, other Circuits have held that a hostile work environment resulting from retaliation for engaging in a protected activity does constitute adverse employment action. *See Lewis v. U.S. Dept. of Labor, Admin. Review Bd.,* 368 Fed.Appx. 20, 30, FN. 15 (11th Cir.2010) (collecting cases). Nevertheless, the Supreme Court has stated that, just as with other types of harassment, a hostile work environment claim requires a plaintiff to prove that the harassing acts were sufficiently severe or pervasive to alter the terms and conditions of employment. *Ekokotu v. Fed. Exp. Corp.,* No. 10–12433, 2011 WL 149509, at *7 (11th Cir. Jan. 9, 2011) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)).

Specifically, Defendant argued that Plaintiff could not rely upon the shift transfer as a retaliatory event because (a) Plaintiff did not file her charge with the EEOC within 300 days of the occurrence of the event; and (b) Plaintiff was unable to establish the necessary causal connection between the protected activity—the filing of her internal sexual harassment complaint on February 23, 2007—and the alleged adverse action—the changing of her shift on May 21, 2007, because three months had elapsed. Second, Defendant argued that the five-day suspension could not be considered because it was unrelated to the previous EEOC charge and was not raised in the complaint. Third, Defendant argued that the remaining retaliatory events alleged by Plaintiff did not constitute adverse actions.

 The comments made by Sgt. Gonzalez that he felt bad for Lt. Bencomo and his family, as well as Sgt. Torres' survey regarding the manner in which Plaintiff handled the sexual harassment incident, do not constitute adverse actions.

It is reasonable to expect that co-workers will form and voice opinions regarding events that unfold in an office environment. If anything, such remarks amount to mere "trivial harms" and "petty slights" that would not dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington,* 548 U.S. at 68, 126 S.Ct. at 2415. In this connection, the PCB's failure to take Plaintiff's complaints against Sgt. Torres and/or the failure to investigate her complaints pertaining to Ofr. Stahl and Sgt. Stahl are not adverse employment actions because they were not taken against Plaintiff herself. *See Entrekin v. City of Panama City Florida,* 376 Fed.Appx. 987, 995 (11th Cir. 2010) (finding that an investigation of the complaint made against a Title VII plaintiff that did not lead to any action taken against plaintiff was not an adverse action). By the same token, the misleading statements by Ofr. Stahl that led Plaintiff to miss one meeting, as well as the investigation of Plaintiff's attire, did not constitute adverse actions because Plaintiff suffered no injury as a result thereof. *Id.* Trivial workplace disputes over attire is not what Title VII was designed to address. Plaintiff was not disciplined or even verbally counseled because of her attire.

 The fact that condoms were found around Plaintiff's work trailer subsequent to her deposition testimony in the sexual harassment matter is not actionable. The incident was promptly investigated, and no suspects were found. Plaintiff did not present any evidence that her co-workers were responsible or that any harm resulted to her therefrom. Likewise, Plaintiff failed to present any evidence that the break-in of her car was related to the filing of her EEOC charge. There is no indication that these incidents would have dis-

suaded a reasonable person from making a discrimination claim. *Id.*

■ With respect to Sgt. Stahl's interference with witnesses in the sexual harassment investigation, the record reflects that the witnesses did, in fact, testify before the disciplinary panel. Ultimately, Plaintiff's complaint of sexual harassment was successful and resulted in disciplinary action against Lt. Bencomo. Thus, Plaintiff suffered no actionable harm. *Entrekin.* 376 Fed.Appx. at 995.

■ With respect to the record of counseling issued in connection with the car wash incident, it is not an adverse employment action absent evidence of how it adversely affected Plaintiff. *McGuire v. Miami–Dade County,* 418 F.Supp.2d 1354, 1361 (S.D.Fla.2006). Plaintiff did not receive a suspension or demotion in connection with this event, nor was her pay decreased because of it. The fact that the allegations were ultimately sustained, contrary to the original recommendation, is of no consequence. Were this event considered to be an adverse action that was causally connected to the protected activity, Defendant had a legitimate reason to investigate Plaintiff because she was responsible for the funds.

The verbal counseling Plaintiff received for allegedly discussing an open investigation does not rise to the level of an adverse employment action because verbal counseling, alone, is neither adverse nor actionable. *See Davis v. Town of Lake Park,* 245 F.3d 1232, 1242 (11th Cir.2001) (finding that "loss of prestige or self-esteem felt by an employee who receives what [she] believes to be unwarranted job criticism or performance review will rarely-without more-establish the adverse action necessary...."); *See Simmons v. Neumann,* No. 97–CV–8653, 1999 WL 1893667, at *16 (S.D.Fla. Nov. 5, 1999) (finding that verbal counseling does not constitute an adverse employment action); *See also,*

*Spencer v. City of Hollywood, Fla.,* No. 098–60028–CIV, 2009 WL 980274, at *6 (S.D.Fla. Apr. 10, 2009) (finding that a written reprimand did not rise to the level of an adverse employment action because there was no indication that it would dissuade a reasonable worker from making or supporting a charge of discrimination). Moreover, the fact that other officers were not investigated for allegedly discussing the same investigation is not actionable because it was not an action taken against Plaintiff. *Entrekin,* 376 Fed.Appx. at 995.

■ With regard to the name-calling, typically, single or few offensive utterances spoken about employees are not severe or pervasive enough to constitute materially adverse action supporting a claim of retaliatory harassment. *Baldwin v. Blue Cross/Blue Shield of Ala.,* 480 F.3d 1287, 1301 (11 Cir.2007) ("Title VII does not prohibit profanity alone, however profane"); *Tucker v. Benteler Auto.,* No. 07cv298–WHA, 2009 WL 531875, at *13 (M.D.Ala. Mar. 3, 2009) (granting summary judgment in Title VII retaliatory harassment claim even though plaintiff's supervisor directed profanity at plaintiff); *See Murphy v. City of Aventura,* 616 F.Supp.2d 1267, 1283 (S.D.Fla.2009) (finding that "it was not objectively reasonable for Plaintiff to believe that the conduct at issue was frequent as only nine sex specific comments were made over two years and eight months"). Rather, courts have applied liability for more egregious conduct, such as when the name-calling was highly offensive, frequent in nature, or occurring for an extended period of time. *See Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 810 (11th Cir.2010) (*en banc*) (finding that "a member of a protected group cannot be forced to endure pervasive, derogatory conduct and references that are gender-specific in the workplace, just because the workplace may be

otherwise rife with generally indiscriminate vulgar conduct. Title VII does not offer boorish employers a free pass to discriminate against their employees specifically on account of gender just because they have tolerated pervasive but indiscriminate profanity as well"). Moreover, the allegedly offensive utterances by Sgt. Torres in this case are inadmissible hearsay because Plaintiff was told about it by a third party.[5]

With respect to the shift change, Defendant argued that it should not be considered because Plaintiff did not file her EEOC charge within 300 days of its occurrence. Plaintiff argued that the shift change was part of a series of events that constituted a hostile work environment. A "hostile work environment, although comprised of a series of separate acts, constitutes one 'unlawful employment practice,' and so long as one act contributing to the claim occurs within the filing period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Freytes–Torres*, 270 Fed.Appx. at 890 (quoting *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir.2003)). Thus, the court "may consider all of [Defendant's] conduct that contributed to a hostile work environment." *Id.* The undersigned will consider the shift change as part of the adverse events alleged by Plaintiff.

■ The shift change was temporary. Although Plaintiff was denied an initial request to maintain her usual shift, she was reassigned to her usual day shift within a reasonable time upon request. Her job responsibilities and job title did not change. Although the reassignment resulted in the loss of an opportunity to maintain an off-duty job, it also offered

Plaintiff a pay increase in the form of a night differential. There is no indication that the changes to her schedule were ongoing or reasonably interfered with her job performance. As such, the shift transfer does not qualify as an adverse action. *See Barnhart v. Wal–Mart Stores, Inc.*, 206 Fed.Appx. 890, 893 (11th Cir.2006) (finding that neither a lateral transfer not resulting in lesser pay, responsibilities, or prestige, nor the refusal to give an employee such a transfer, was adverse.) (internal citations omitted).

■ Defendant argued that the five-day suspension was unrelated to the previous EEOC charge and was not raised in the complaint. However, a plaintiff is not required to list every instance of discrimination in its EEOC complaint. A complaint filed pursuant to Title VII is "limited to the 'scope' of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466. Here, the undersigned finds that the five-day suspension is not precluded from consideration in this case because it can be reasonably expected that any alleged retaliation stemming from Plaintiff's discrimination complaint would surface in the EEOC investigation. Plaintiff's purpose for discussing the five-day suspension is not to interject a new claim of discrimination, but rather to supplement her retaliation claim with an additional adverse employment action. It appears from the record that Major Herrera prepared a memorandum dated October 1, 2008, recommending that the allegations raised by Medina not be sustained. However, a few days later, a Disciplinary Action Report issued recommending a 5-day suspension. The suspension resulted

---

**5.** Because Plaintiff does not dispute this in her response, it is deemed abandoned. *Julceus v. City of North Miami*, No. 08–23348– CIV, 2009 WL 3818430, at *7, n. 3 (S.D.Fla. Nov. 13, 2009) (treating as abandoned claims not argued by a party).

from the investigation of Plaintiff stemming from the complaint of a civilian, not Defendant. Defendant was obligated to conduct an investigation of Plaintiff. According to the record evidence, upon investigation, it was found that Plaintiff had violated several provisions of the departmental rules in dealing with the Medina incident. There is no indication that Medina was affiliated with Defendant. Moreover, the incident took place on or about May 2008, well after the date of Plaintiff's protected activity.

Individually, the alleged retaliatory acts do not constitute adverse employment actions to support a claim of retaliation. Even if viewed collectively as events within a hostile work environment, Plaintiff's retaliatory harassment claim fails.

To establish a *prima facie* case of hostile work environment, Plaintiff must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris*, 510 U.S. at 21, 114 S.Ct. at 370). To prove a hostile work environment claim, an employee must demonstrate that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability. *Id.; See Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir.1999).

In deciding whether the harassing conduct is sufficiently severe or pervasive enough to alter the terms and conditions of employment and create an abusive working environment, courts focus on the totality of the circumstances. *Mendoza*, 195 F.3d at 1246. Plaintiff "must prove that the environment was both subjectively and objectively hostile.... The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808–09 (11th Cir.2010) (*en banc*). With respect to the objective component, courts consider (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Miller*, 277 F.3d at 1275. These factors are assessed under a totality of the circumstances. *Id.* at 1276. The objective severity should be judged from the perspective of a reasonable person in light of all the circumstances. *Oncale*, 523 U.S. at 81, 118 S.Ct. at 1003.

■ A review of the factors necessary to establish a hostile work environment claim in this case reveals that Plaintiff did not subjectively suffer a severe or pervasive retaliatory work environment. Compare, with *Mendoza*, 195 F.3d at 1246 (finding that evidence of supervisor stating, "I'm getting fired up," rubbing his hip against plaintiff's hip while smiling and touching her shoulder, making a sniffing sound while looking at plaintiff's groin area, and constantly following and staring at plaintiff fell well short of the level of either severe or pervasive conduct sufficient to alter the terms or conditions of plaintiff's employment). The Court recognizes that there were a series of events over a period of time that Plaintiff found to be unpleasant. While most of the conduct

may have been rude and in poor taste, it was not actionable under Title VII. *Miller*, 277 F.3d at 1275. The alleged conduct was intermittent and was not physically threatening. Most of the events were in the nature of common workplace incidents, such as missed meetings, attire issues, comments by co-workers, etc. Furthermore, there was no evidence that the alleged conduct interfered with Plaintiff's work performance or altered the conditions of her employment. In fact, Plaintiff was favorably reviewed during this time, including by Sgt. Gonzalez. She received an overall rating of "Outstanding" in her 2007–2008 yearly performance evaluation, as well as several commendations. See, Employee Performance Reports, 07/31/2006 through 07/29/2007; 07/30/2007 through 7/27/2008; and November 26, 2008 Commendation Memorandum. **[DE 37]**.

Even viewing the evidence in the light most favorable to Plaintiff, the alleged conduct did not rise to the level of severe and pervasive harassment that would alter the terms and conditions of Plaintiff's employment. The Eleventh Circuit has affirmed summary judgment based upon conduct more severe and pervasive than what Plaintiff has alleged in this case. *See e.g., Godoy v. Habersham County*, 211 Fed. Appx. 850, 853–54 (11th Cir.2006) (summary judgment affirmed where South-American plaintiff claimed he was subject to racial slurs "almost every shift," and that his supervisor battered him and told him "to go back to his boat and sail to South America where he belongs"); *Barrow v. Ga. Pacific Corp.*, 144 Fed.Appx. 54, 57 (11th Cir.2005) (summary judgment affirmed where black employee claimed his superintendent told him several times that he was "going to kick [his] black ass"; witnessed numerous other forms of racially offensive conduct and comments; saw the rebel flag on tool boxes and hard hats and "KKK" on the bathroom wall and on a block console; saw a noose in another employee's locker; was called a "nigger" by his supervisor and told he would be "cut" if he looked at "that white girl"; and was called "black boy" and "dumb ass" by two other supervisors); *Mitchell v. Pope*, 189 Fed.Appx. 911 (11th Cir.2006) (affirming summary judgment in favor of employer and finding that sixteen incidents of offensive conduct including the supervisor's attempts on three occasions to touch the employee and kiss her and numerous incidents of the supervisor making sexual and offensive remarks to the employee did not constitute the type of "severe" harassment necessary for liability to attach under Title VII). Therefore, Plaintiff's hostile work environment claim does not survive summary judgment.

Because the undersigned finds that none of these events constitute adverse employment actions, the Court does not reach analysis of the causation element of the *prima facie* case of retaliation under *McDonnell Douglas*. Likewise, having determined that Plaintiff has not met her *prima facie* case of retaliation, the Court does not reach the burden-shifting framework set forth in *McDonnell Douglas*.

### Conclusion

In light of the foregoing, the undersigned finds that the retaliatory events alleged by Plaintiff, individually, do not constitute adverse actions and, collectively, are insufficient to establish a claim of hostile work environment necessary to support Plaintiff's retaliation claim. As detailed herein, Plaintiff failed to establish a *prima facie* case of retaliation, as well as the attendant *prima facie* case of hostile work environment. As such, the undersigned finds that summary judgment is warranted in favor of Defendant with respect to Plaintiff's claim of retaliation.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Mo-

tion for Summary Judgment [DE 36] is **GRANTED.**