[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2008
THOMAS K. KAHN
CLERK

_____

No. 05-15805

_____

D. C. Docket No. 03-01732-CV-ORL-22KRS

PAULA FREYTES-TORRES,

Plaintiff-Appellant,

versus

CITY OF SANFORD, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 25, 2008)

Before EDMONDSON, Chief Judge, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Paula Freytes-Torres appeals the district court's grant of summary judgment for the City of Sanford, Florida ("Sanford" or "the City") in her Title VII sexual harassment and retaliation action, brought pursuant to 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). We AFFIRM in part and VACATE and REMAND in part.

## I. BACKGROUND

Freytes-Torres alleges that she was harassed by her superior, Deputy City Manager Roger Dixon, from April 2000 to February 2002 while she was employed by the City. According to Freytes-Torres, Dixon's harassment included daily stops by her desk to leer at her breasts; daily phone calls in which Dixon called chiefly to comment on Freytes-Torres' sexy voice; asking Freytes-Torres out on dates; making masturbatory gestures with Freytes-Torres in the room; meeting privately with her to explain his attraction, and when rebuffed, grabbing her hand and threatening her not to tell anyone; and blocking Freytes-Torres in a stairwell when she was 7-months pregnant, leaning into her body and deliberately smelling one breast.

At the beginning of this period, Freytes-Torres served the city as an administrative secretary. In August of 2001, the City "temporarily" transferred Freytes-Torres to a contracts coordinator position which she held until Sanford discharged her in January 2004. Dixon served as Freytes-Torres's direct

2

supervisor for only one month, but his role in the City hierarchy was second only to the City Manager. Dixon supervised the directors of the City's departments, and when the City Manager was unavailable, Dixon acted as the chief administrative officer for the City.

## II. DISCUSSION

A. Primia Facie Hostile Work Environment

Freytes-Torres argues on appeal that she presented sufficient evidence of a hostile work environment to survive summary judgment on her sexual harassment claim. Freytes-Torres asserts that the harassment against her was pervasive because it occurred relentlessly for months at a time, that two incidents during November 2000 in Dixon's office and in a City Hall stairwell were severe on their own, and that other incidents, taken together, were also severe and humiliating. She argues that Dixon's conduct unreasonably interfered with her work performance, despite her continued positive evaluations as a top performer, by interrupting her while she was working, causing her to be nervous and upset at work, and requiring her to miss work in order to avoid him.

We review the district court's grant of summary judgment de novo, "applying the same legal standards as the district court, and viewing all facts and reasonable inferences drawn therefrom in the light most favorable to [the non-

moving party]." Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000). Summary judgment is appropriate where the evidence shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing Fed. R. Civ. P. 56(c)).

To establish a hostile work environment claim under Title VII, an employee must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). The first three factors were not contested by Sanford on summary judgment. R8-70 at 21-26. On the fourth factor, the district court held that the harassment was not sufficiently severe or pervasive and, therefore, did not address the fifth element. R16-129 at 3-4.

The fourth element of a Title VII hostile work environment claim requires that "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive as to alter the terms and conditions of employment, and this

4

subjective perception must be objectively reasonable." Mendoza, 195 F.3d at 1246

(citation and quotation omitted). We have identified four factors to help determine

the objective reasonableness of the employee's perception that the harassment was

severe and pervasive enough to alter the terms and conditions of employment:

"(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the

conduct is physically threatening or humiliating, or a mere offensive utterance; and

(4) whether the conduct unreasonably interferes with the employee's job

performance." Id.[1]

Freytes-Torres has established that she subjectively perceived the

harassment as severe or pervasive enough to create a hostile work environment.[2]

Freytes-Torres stated that she felt offended, disgusted, embarrassed, and humiliated

---

[1]As an initial matter, Sanford insists that we cannot consider the incidents of harassment that fall more than 300 days prior to the 2 April 2002 filing of Freytes-Torres's Equal Opportunity Employment ("EEOC") charge. Because Florida is a deferral state, Freytes-Torres was required to file a Charge of Discrimination within 300 days of an unlawful employment practice in order to exhaust her administrative remedies and bring suit on the basis of that action. See EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) (per curiam). A "hostile work environment, although comprised of a series of separate acts, constitutes one 'unlawful employment practice,' and so long as one act contributing to the claim occurs within the filing period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S. Ct. 2061, 2074 (2002)). Dixon's harassing conduct continued through 19 February 2002. This is within 300 days of 2 April 2002, and we may consider all of Dixon's conduct that contributed to a hostile work environment.

[2]While the district court "put[] aside the question of whether Freytes-Torres subjectively perceived this conduct as severe and pervasive," R16-129 at 3, "sexual harassment is subjectively severe and pervasive if the complaining employee perceived it to be at the time," Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1248 (11th Cir. 2004).

5

by Dixon's conduct, that she missed work in order to avoid Dixon, and at one point that she thought he was going to rape her. R16-129 at 3 n.2. We must therefore consider whether her subjective perception was objectively reasonable.

Freytes-Torres has established the objective reasonableness of her perception that she was subjected to severe and pervasive harassment that created an abusive work environment. The frequency of the conduct weighs in Freytes-Torres's favor. From April 2000 into July 2000, and again in late January and February 2002, Freytes-Torres was subjected to at least daily harassment from Dixon, and the sixteen months of less-than-constant harassment do not mitigate the four months where the harassment occurred on a daily basis.

The incidents in November 2000, when Dixon physically restrained Freytes-Torres from leaving his office in order to warn her not to tell anyone about his sexual advances, and when Dixon accosted her alone in a stairwell, indicate that the harassment she had to endure was severe. We need not consider whether the other incidents of sexual harassment were severe, as these two are sufficient to tilt this factor in Freytes-Torres's favor.

Objectively, the November 2000 incidents were physically threatening, and thus, the third factor weighs in Freytes-Torres's favor as well. The fourth and final factor, whether the harassment unreasonably interfered with Freytes-Torres's work

performance, weighs in favor of Sanford. While Freytes-Torres has subjectively stated that she found Dixon's harassment to detract from her job performance, the objective evidence indicates to the contrary. Throughout the course of her employment Freytes-Torres consistently received positive evaluations, performance bonuses, and raises.

Based on the totality of the circumstances, we conclude that the conduct here was more egregious than in <u>Mendoza</u>, where we affirmed the district court's grant of judgment as a matter of law to the defendant. <u>Mendoza</u>, 195 F.3d at 1253. In <u>Mendoza</u>, we concluded that the plaintiff could only show frequency. <u>Id.</u> at 1248-49. Here, we conclude that Freytes-Torres can show frequency, severity, and physically threatening conduct. Accordingly, we will vacate and remand the district court's grant of summary judgment as to Freytes-Torres's hostile work environment claim.

B. <u>Sanford's Faragher-Ellerth Affirmative Defense</u>

Sanford responds that, even if Freytes-Torres did adequately set forth a claim of sexual harassment, that claim is defeated under the <u>Faragher-Ellerth</u>[3] affirmative defense.

---

[3] <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807-8, 118 S. Ct. 2275, 2292-93 (1998); <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 764-65, 118 S. Ct. 2257, 2270 (1998).

The district court's order did not reach Sanford's Farangher-Ellerth affirmative defense.  However, when reviewing a grant of summary judgment, we "may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied."  Fitzpatrick, 2 F.3d at 1117.

In Farangher and Ellerth, the Supreme Court applied common law agency principles to clarify under what circumstances an employer can be held vicariously liable for the hostile work environment created by a supervisor.  Madray v. Publix Supermarkets, 208 F.3d 1290, 1296 (11th Cir. 2000).  The employer is liable when the supervisor has immediate or successively higher authority over the employee.  Id.  However, where the employee suffered no adverse tangible employment action as a result of the harassment, the employer has access to an affirmative defense, which it can successfully interpose where it can show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Id. at 1296-97 (internal quotation omitted).

Sanford did not execute its sexual harassment policy in good faith.  The ultimate test under Faragher-Ellerth is not whether or not the employer promulgated and disseminated a sexual harassment policy: this is simply a

8

particular way in which the employer can show that it took reasonable care to prevent sexual harassment. See Madray, 208 F.3d at 1297-98. The bad-faith administration of a sexual harassment policy can reduce or eliminate the support that the existence of that policy provides to the employer's attempt to demonstrate reasonable care in preventing sexual harassment. See id. at 1299 ("because we find no inherent defect in the complaint procedures established by [the employer's] sexual harassment policy, *nor any evidence that the policy was administered in bad faith*, we conclude that [the employer] exercised reasonable care" (emphasis added)).

Freytes-Torres first directed her sexual harassment complaint to the City Manager, who did not act on the complaint. Freytes-Torres then had to complain to the Human Resources Director, who was directly supervised by Deputy City Manager Dixon, the harassing supervisor. Freytes-Torres attempted to use a formal complaint procedure, submitting a written statement detailing Dixon's conduct. The Human Resources Director urged her not to be "too graphic" in her complaint. R12-91-2 at ¶ 176. After submitting her statement, Sanford pressured Freytes-Torres into retracting the formal complaint because a reporter was asking for a copy and, under Florida law, the complaint was a public record that Sanford would be required to produce. After the complaint was made, the Human

9

Resources Director interviewed no employees other than Freytes-Torres and Dixon, and conducted no other investigation; this low level of scrutiny was justified on the ground that Freytes-Torres had only initiated an informal complaint. City Manager Tony VanDerworp then told Freytes-Torres that, without a formal complaint, he would do nothing more than remove her from Dixon's direct supervision, an action which was taken almost a month later as part of a reorganization that had been planned months prior to Freytes-Torres's complaint. In sum, Sanford did not allow Freytes-Torres's complaint to be heard by someone who was not directly supervised by her harasser, pressured her to retract her formal, written complaint, and then used the absence of a formal complaint to justify a truncated investigation and an absence of punishment.

Accordingly, we cannot affirm the district court's grant of summary judgment as to Freytes-Torres's sexual harassment claim on the alternative ground of the Faragher-Ellerth affirmative defense.

C. Retaliation

Freytes-Torres argues that Sanford retaliated against her for filing her complaint and EEOC charge by discouraging her from making her complaint, ostracizing her, increasing her workload and responsibilities without increased pay, assigning her to work in dangerous areas, paying another employee more for

10

performing similar duties, and ultimately firing her.  She asserts that her discharge

was caused by her protected activities because it was temporally proximate to the

new City Manager's being informed of her EEOC charge against Sanford,

sometime between August and November, and to the filing of the instant complaint

in December.  Freytes-Torres claims that, even though Sanford had not been served

with the complaint at the time she was terminated, it knew about the complaint

because new City Manager Al Grieshaber was familiar with Title VII law and was

aware of when Freytes-Torres had received her 90-day right-to-sue letter, and

could reasonably be expected to have been checking on whether a complaint had

been filed.[4]  Freytes-Torres asserts that her termination as part of a January 2004

reduction-in-force ("RIF") shows both a causal link and pretext because:

(1) Sanford identified her position for the RIF as Administrative Secretary, but she

was a Contracts Coordinator; (2) even if she had been eliminated as an

Administrative Secretary, she was qualified for the position of Contracts

---

[4]Freytes-Torres believes the City could also have had knowledge of her complaint because Sanford received a bill for legal services for a telephone conference regarding a "pending litigation update" about Freytes-Torres on 22 January 2004.  SR4-A at 2825.  That is the same date that City Manager Al Greishaber informed Freytes-Torres by memorandum that she would be included in the RIF.  R8-70-11.

We granted Freytes-Torres's Motion to Supplement the Record on Appeal on 14 February 2007.  Sanford objected and filed a Motion to Reconsider the Court's Order Granting Appellant's Motion, or in the Alternative, a Motion to Supplement the Record on Appeal.  We decided to carry Sanford's motions with the case on 26 February 2007.  We now DENY Sanford's Motion to Reconsider and GRANT the City's motion to Supplement the Record on Appeal.

Coordinator, which was still authorized, and she could have been used to fill that position; (3) the contracts coordinator position that she held was funded by grants, not by the general city budget, so Sanford saved no money by discharging her; (4) the temporary secretary who was hired to replace Freytes-Torres after Freytes-Torres became the Contracts Coordinator was retained; (5) after terminating Freytes-Torres, Sanford hired another employee to perform her duties; and (6) Freytes-Torres and three other employees terminated in the RIF had engaged in activities protected by Title VII.

In order to make a prima facie case of retaliation under Title VII, an employee must show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). The first element is not in dispute.

Prior to Burlington N. & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S. Ct. 2405 (2006), we had held that in order to satisfy the second requirement, an adverse employment action, an employee could show either an "ultimate employment decision" or a substantial employment decision. Stavropoulos v. Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004). "Ultimate employment

12

decisions include decisions such as termination, failure to hire, or demotion."

Id. at 617. Substantial employment decisions are those that "alter[] the employee's

compensation, terms, conditions, or privileges of employment, deprive him or her

of employment opportunities, or adversely affect[] his or her status as an

employee." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)

(quotation and citation omitted). However, in White, the Supreme Court held that

in order to sustain a Title VII retaliation claim, an employee must show that "a

reasonable employee would have found the challenged action materially adverse,

which in this context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination." White, 126 S.Ct. at 2415

(quotation omitted).

The third requirement for a causal link "is construed broadly so that a

plaintiff merely has to prove that the protected activity and the negative

employment action are not completely unrelated." Pennington, 261 F.3d at 1266

(quotation omitted). "For purposes of a prima facie case, close temporal proximity

may be sufficient to show that the protected activity and the adverse action were

not wholly unrelated." Gupta, 212 F.3d at 590 (quotation omitted). Freytes-Torres

has established such a temporal proximity between the City's receipt of her right-

to-sue letter from the EEOC and her discharge.

13

"Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Pennington, 261 F.3d at 1266. This does not change that "[t]he ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." Id. An employee may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [those reasons] unworthy of credence." Silvera v. Orange County School Bd., 244 F.3d 1253, 1258 (11th Cir. 2001) (citation omitted).

We need not analyze the scope of White to determine that Freytes-Torres cannot carry her burden as to her non-termination allegations. Discouraging an employee from filing a claim, without any actual action, cannot satisfy this element, regardless of the standard. Sanford's alleged ostracization of Freytes-Torres is not substantial and is the sort of "petty slight" that is not actionable under White. See White, 126 S. Ct. at 2415-16. As to the remainder of Sanford's actions, even assuming arguendo that they are adverse employment actions, Sanford can show a legitimate business purpose for them and Freytes-Torres does

14

not proffer a reason why that purpose is pretextual. Therefore, Sanford is entitled to summary judgment on Freytes-Torres's retaliation claims other than her claim of retaliatory termination.

Termination is an ultimate employment action that is undeniably adverse. Stavropoulos, 361 F.3d at 617. Freytes-Torres was discharged in January 2004 after the EEOC complaint process culminated in the filing of this suit in December 2003, and she has met her burden of showing a causal link due to the temporal proximity. See Gupta, 212 F.3d at 590. Sanford argues against this by stating that Grieshaber, the main decision maker behind the reduction in force ("RIF") which led to Freytes-Torres's discharge, was unaware of Freytes-Torres's protected activities, and was unaware of this suit. Grieshaber is an attorney, has a Master of Laws with course work in personnel law, and prior to coming to Sanford, worked as a City Attorney for a dozen years. After becoming Sanford City Manager, the City's risk manager and an attorney briefed him on Freytes-Torres's EEOC charge as a liability risk sometime between August 2003 and November 2003. Sanford received its copy of Freytes-Torres's 90-day right-to-sue letter in September 2003. While a summons on the instant complaint had not yet been served on Sanford at the time Freytes-Torres was discharged, it is a reasonable inference that Grieshaber was aware of the import of an EEOC 90-day right-to-sue letter and that Sanford

15

was aware of the pendency of a suit before the district court issued its summons on the complaint. Freytes-Torres has satisfied the elements of a prima facie retaliation claim.

Sanford must therefore proffer a legitimate business reason for Freytes-Torres's discharge. Sanford asserts that it needed to cut costs and it felt that there was an excess of Administrative Secretaries in Freytes-Torres's division, so that position was one of those singled out for elimination in the 26 January 2004 RIF. This proffer fulfills Sanford's burden.

Freytes-Torres carries her burden of showing that this proffered reason was pretextual. Freytes-Torres's 22 January 2004, discharge papers identify the position that she held, which was being eliminated, as Administrative Secretary. Freytes-Torres, however, was not an Administrative Secretary in January 2004, and had not been for over two years. Freytes-Torres had been transferred to the position of Contracts Coordinator effective 30 July 2001, and had continued to hold that position and perform the duties of that position for the remainder of her time with Sanford. While her transfer could "be terminated by the City at will with[]out cause," R8-70-15 at 14, Sanford has not produced a document terminating its memorandum of understanding or changing Freytes-Torres's status back to Administrative Secretary using the same "change of status" form. A

"reasonable fact finder could find [the City's explanation] unworthy of credence," and therefore Sanford was not entitled to summary judgment on Freytes-Torres's retaliation claim arising out of her January 2004 termination. Silvera, 244 F.3d at 1258 (citation omitted).[5]

Accordingly, we vacate and remand the district court's grant of summary judgment as to Freytes-Torres's claim of retaliatory termination, but affirm summary judgment as to her other allegations of retaliation.

## III.  CONCLUSION

Freytes-Torres appeals the district court's grant of summary judgment for Sanford in her Title VII sexual harassment and retaliation action.  Upon careful consideration of the briefs of the parties, and thorough review of the record, we find reversible error.  Accordingly, the district court's grant of summary judgment is **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[5]The district court improperly considered what the City "believed," R16-129 at 9 (citing E.E.O.C. v. Total System Servs., 221 F.3d 1171, 1176-77 (11th Cir. 2000)).  Focusing on an employer's "*good faith* belief about falsity, concealment, and so forth" would have been proper *if* Freytes-Torres were discharged in a "personnel decision involving a false statement (or a cover up)" and "present[ed] no evidence that [her employer] lacked a good faith belief."  Id. at 1176-77 (emphasis added).  As it stands, precisely because "[t]here is a dispute in the record," R16-129 at 8, about a material fact – whether the City saved money by including Freytes-Torres in the RIF – summary judgment is inappropriate.  See Fed. R. Civ. P. 56(c).