[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15090

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 3, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:08-cv-03528-JOF

GRACE E. GUTHRIE,

Plaintiff-Appellant,

versus

WAFFLE HOUSE, INC.,
TERENCE LAWERY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 3, 2012)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and SANDS,[*] District
Judge.

---

[*]Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia,
sitting by designation.

PER CURIAM:

Grace E. Guthrie appeals from the district court's grant of Waffle House's and Terence Lawery's motions for summary judgment on her Title VII racial and sexual harassment and discrimination claims, 42 U.S.C. § 2000e-2(a), Title VII retaliation claim, 42 U.S.C. § 2000e-3(a), and on her state law claims for negligent supervision, and negligent retention, O.C.G.A. § 34-7-20, and intentional infliction of emotional distress. On appeal, Guthrie argues that the harassment she endured was severe and pervasive and created a hostile work environment, that Waffle House knew of the harassment and was, therefore, negligent in retaining the harassing parties, and that Lawery's harassment was extreme and outrageous and caused her emotional distress. After reviewing the record, and having the benefit of the parties' briefs and oral argument, we affirm the district court's grant of summary judgment.

## I.

Guthrie, a white female, was a waitress at a Waffle House restaurant in Lawrenceville, Georgia, from October 31, 2007, to September 24, 2008. She alleges that a cook, Farrell Barnett, and Lawery, her supervisor, subjected her to racial and sexual harassment during her employment there. Both Barnett and Lawery are black males. Barnett began working as a cook at the restaurant in mid-

2

November 2007.  Lawery came on as a supervisor at the restaurant on December 23, 2007.

Guthrie claims that Barnett began sexually and racially harassing her when he started working at the restaurant.  On unspecified dates, Barnett grabbed Guthrie "on my butt" two to five times; "talked dirty" to Guthrie, including saying five times that he wanted to "fuck" her and "lick" her "all over;" once spoke openly about having sex in another waitress's van in the restaurant's parking lot; and asked Guthrie on a date 10 to 20 times, which she always refused.  Barnett said 15 times that Guthrie would not date him because he was black, and commented 10 times that God had created everyone equal.  On September 3, 2008, Barnett said that Guthrie "could just pee in his mouth," after she stated that she was taking a restroom break.  On September 24, 2008, Barnett approached Guthrie from behind, put his arm around her shoulder, and told her, "Baby, we need to talk," after she had informed him that she would be instituting a harassment lawsuit.

Guthrie admitted that she and Barnett would hug in a "friendly" manner when they saw one another.  Video evidence shows her hugging and kissing Barnett on September 3, 2008.  Guthrie also occasionally joked around with Barnett in the restaurant.

3

Guthrie claims that Lawery's sexual and racial harassment of her began in August 2008. Early in that month, Guthrie had voluntarily quit her job at the restaurant to move in with a friend in Gainesville, Georgia. The new arrangement, however, was unsuccessful. After a week away, Guthrie returned to the Lawrenceville area and asked both Barnett and Lawery for her old job back. Lawery agreed, and Guthrie stated in deposition that she was happy to resume her work at the restaurant. Lawery, though, allegedly told Guthrie that she owed Lawery and Barnett a "huge favor" for giving Guthrie her job back, which was not elaborated upon. On another occasion, Lawery told Guthrie, "I want to have you." He also said on 11 to 15 occasions that he wanted to "have" Guthrie's female friend. Lawery once asked Guthrie if she had ever been with a black man, and once asked the same question of Guthrie's friend. Lawery told Guthrie's friend, in Guthrie's presence, "once you go black, you never go back," that he would "bust [the friend] wide open," "be her first black," "lick her ass," and "eat her pussy." In multiple instances, Lawery spoke openly about his previous night's sexual exploits with other women. On an unspecified date, Lawery approached Guthrie from behind as she was sitting on a stool and kissed her on the cheek. On September 4, 2008, Lawery said that Guthrie could "shit in my mouth," after hearing of

4

Barnett's "pee in his mouth" comment. Lawery twice commented that Guthrie did not date black men.

On September 23, 2008, Guthrie called for the first and only time the Waffle House Associate Hotline to complain of the alleged harassment by Lawery and Barnett. The Hotline is a toll-free telephone number staffed with a live operator 24-hours-per-day that employees and customers alike can anonymously call to lodge harassment, discrimination, retaliation, or other type of complaints. Guthrie had been aware of the Hotline's existence during her entire period of employment with the restaurant. A few days after Guthrie's call to the Hotline, Waffle House conducted an investigation, with which Guthrie did not cooperate on advice of counsel.

On September 24, 2008, after Barnett touched her and told her "we need to talk," Guthrie left the restaurant in the middle of her shift. Pursuant to Waffle House policy, Guthrie's action of leaving work without permission resulted in the termination of her employment at the Lawrenceville restaurant. Shortly thereafter, however, Guthrie's request for a transfer was granted, and she went to work at another Waffle House location.

**II.**

We review the district court's grant of a motion for summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1313-14 (11th Cir. 2008) (citation omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Issues not raised on appeal are abandoned. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1296–97 (11th Cir. 2010).

## III.

Guthrie has abandoned her challenge to the district court's grant of summary judgment in favor of Waffle House on her Title VII retaliation claim. Thus her only remaining Title VII claim is that Waffle House subjected her to a hostile work environment.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a hostile environment sexual harassment claim under Title VII, an employee must show:

6

(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*) (citation omitted). A similar standard applies to hostile environment racial harassment claims. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275-76 (11th Cir. 2002). "The employee must subjectively perceive the harassment as sufficiently severe and pervasive," and "this subjective perception must be objectively reasonable." *Mendoza*, 195 F.3d at 1246 (internal quotations omitted). To determine the objective component, we examine the totality of the circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening, and whether the conduct unreasonably interferes with the employee's job performance. *Id.*

Not all objectionable conduct or language amounts to discrimination under Title VII. *Reeves v. C.H. Robinson World Wide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010). Title VII is not a "general civility code," and "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious)" do not constitute a

hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283–84, 141 L. Ed. 2d 622 (1998) (internal citation omitted). Workplace conduct is viewed cumulatively and in its social context. *Reeves*, 594 F.3d at 807.

For Guthrie to prevail on both her sexual and racial hostile work environment claims, she must first show that she "'subjectively perceive[d]' the harassment as sufficiently severe and pervasive to alter the terms or conditions of her employment." *Mendoza*, 195 F.3d at 1246 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S. Ct. 367, 370–71 (1993)). Guthrie has failed to create a genuine issue of material fact on whether she subjectively perceived Barnett's and Lawery's conduct to be sufficiently severe to support her claim. The undisputed evidence shows that, despite the alleged harassment directed toward Guthrie by Barnett beginning in November 2007, Guthrie did not call the Hotline until late September 2008. Additionally, Guthrie asked Barnett, her alleged harasser, to help her return to work at the restaurant in August of 2008 following her weeklong foray to Gainesville. Guthrie admitted that she was both appreciative and happy when she returned to work at the restaurant. She also admitted to joking with and hugging Barnett, and video evidence shows her hugging and kissing him on September 3, 2008. Guthrie presents no evidence

8

rebutting these facts. The evidence shows that she did not subjectively perceive the harassment by Barnett to be so severe or pervasive as to constitute an abusive environment or alter the terms of her employment. Furthermore, Guthrie said that she walked off the job because of Barnett's conduct, not Lawery's, and that Lawery did not want her to go because she was always a good worker. Thus Guthrie's Title VII hostile work environment claim fails as a matter of law under the subjective prong of the analysis.

Guthrie has also failed to show that her alleged harassment was objectively severe or pervasive enough to support a Title VII claim under the four factors in *Mendoza*. First, the conduct she describes was relatively infrequent as compared to cases where this court has found a hostile work environment. In *Reeves v. C.H. Robinson World Wide, Inc.*, 594 F.3d 798 (11th Cir. 2010), this court reversed a grant of summary judgment for an employer on a hostile work environment claim, noting that the employee claimed that her co-workers made obscene and derogatory comments about her and women in general "on a daily basis." *Id.* at 804. Similarly, in *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417 (11th Cir. 1999), we reversed summary judgment for an employer where the plaintiff alleged "almost-daily abuse." *Id.* at 418. Additionally, in *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002), we found sufficient

9

frequency where a co-worker "hurled … ethnic slurs at [the plaintiff] three to four times a day … throughout the approximately one month period the two men were both employed at Kenworth." *Id.* at 1276. On the other hand, in *Mendoza* we affirmed summary judgment because the frequency of the harassing conduct was "for the most part lacking." *Mendoza*, 195 F.3d at 1248. The facts in *Mendoza* comprised of, over an eleven month period:

> (1) one instance in which Page said to Mendoza "I'm getting fired up"; (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's "constant" following and staring at Mendoza in a "very obvious fashion."

*Id.* at 1247. Guthrie's evidence – alleging only a few dozen comments or actions by Lawery and Barnett, spread out over a period of eleven months, that could arguably be construed as harassment – is more similar to the evidence we saw in *Mendoza* than that we addressed in *Reeves*, *Dees* or *Miller*. Thus Guthrie has failed to show that the alleged harassment was sufficiently frequent to support her claim.

Second, the alleged conduct does not rise to the level of severity to support a claim of hostile work environment. Although Barnett and Lawery were rude and boorish in their statements and behavior, their actions fall well short of conduct so

severe as to "alter or change the terms of [Guthrie's] working conditions," as determined by this court's case law. For example, in *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501 (11th Cir. 2000), we found a male co-worker's conduct to be "severe" toward the female plaintiff because his "behavior included giving [her] unwanted massages, standing so close to [her] that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts." *Id.* at 509. Likewise, in *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238 (11th Cir. 2004), we found sufficient severity in a male co-worker's conduct toward the female plaintiff involving "many direct as well as indirect propositions for sex," including "following her into the restroom, and repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," as well as "enlisting the assistance of others to hold her while he attempted to grope her." *Id.* at 1248. Meanwhile, in *Mendoza*, we found severity "clearly absent" on the facts presented. *Mendoza*, 195 F.3d at 1248. Guthrie's allegations describe comments or conduct that is rude and boorish, but falls short of describing severe and pervasive harassment necessary to support her claim.

Third, the evidence shows that Guthrie did not feel physically threatened as a result of Barnett's and Lawery's conduct. In her deposition, she conceded that she did not feel physically threatened by Barnett's alleged sexual and racial

11

conduct, a statement supported by the evidence that she hugged and kissed him voluntarily during the time period when she alleges she suffered the worst harassment.  Although Guthrie claimed that she felt physically threatened by Lawery, she could not offer any supporting evidence to support this bare allegation.  She even requested that Lawery come to her aid in a separate incident occurring in September 2008.

Finally, Guthrie has presented no evidence showing that the alleged harassment actually prevented her from performing her job duties.  She maintained her employment at Waffle House throughout the entire period of alleged harassment, and claims that she was a good worker throughout her tenure there. Her contact with Lawery and Barnett was sporadic.  She worked a full shift with Barnett only five times.  Guthrie admits that she was happy to return to the restaurant in August 2008 after her brief absence. Thus Guthrie has failed to show that the alleged harassment unreasonably interfered with her work performance.

Under the four *Mendoza* factors for testing whether harassment is sufficiently severe and pervasive enough to create a hostile work environment, the conduct alleged by Guthrie falls short as a matter of law.  Construing the facts in the light most favorable to Guthrie, Barnett and Lawery both exhibited boorish, rude, unwelcome, and insensitive behavior, but it was not of the frequency or

12

severity necessary to rise to the level of Title VII racial or sexual discrimination. Additionally, Guthrie did not feel physically threatened by the two men, and there is no evidence that their conduct interfered with her ability to do her job. The district court correctly granted summary judgment to Waffle House on Guthrie's Title VII hostile work environment claim.

## IV.

Under Georgia law, a plaintiff cannot sustain a negligent retention claim where the negligent retention claim is derivative of an underlying claim, and the underlying claim fails. *See Phinazee v. Interstate Nationalease, Inc.*, 514 S.E.2d 843, 846 (Ga. Ct. App. 1999) (affirming summary judgment on negligent retention claim because plaintiff could not establish an underlying claim of intentional infliction of emotional distress). Under Georgia tort law, a claimant cannot recover damages for negligence resulting in an emotional injury unless the claimant suffers a physical impact or provides evidence of "malicious, willful, or wanton" conduct. *Lee v. State Farm Mut. Ins. Co.*, 533 S.E.2d 82, 84 & n.2 (Ga. 2000). A plaintiff must prove (1) a physical impact, (2) physical injury resulting from the impact, and (3) that the physical injury caused the mental suffering or emotional distress. *Id.* at 85. "Under Georgia law, liability for negligent hiring or retention requires evidence that the employer knew or should have known of the

13

employee's propensity to engage in the type of conduct that caused the plaintiff's injury." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1247 (11th Cir. 2001). "An employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Leo v. Waffle House, Inc.*, 681 S.E.2d 258, 262 (Ga Ct. App. 2009) (footnote, alterations, and quotation marks omitted).

To succeed on her intentional-infliction-of-emotional-distress claim under Georgia law, Guthrie must show (1) intentional or reckless conduct, (2) extreme and outrageous conduct, (3) a causal connection between the wrongful conduct and her emotional distress, and (4) severe emotional distress. *Fisher v. Toombs County Nursing Home*, 479 S.E.2d 180, 185 (Ga. Ct. App. 1996). Whether actions rise to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress is generally a question of law. *Yarbray v. S. Bell Tel. & Tel. Co.*, 409 S.E.2d 835, 838 (Ga. 1991). The extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Biven Software v. Newman*, 473

14

S.E.2d 527, 529 (Ga. Ct. App. 1996). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Bridges v. Winn-Dixie Atlanta, Inc.*, 335 S.E.2d 445, 448 (Ga. Ct. App. 1985). Under Georgia law, an employer is not responsible for the sexual misconduct of an employee because sexual misconduct torts are purely personal in nature and are outside the scope of employment. *Alpharetta First United Methodist Church v. Stewart*, 472 S.E.2d 532, 535-36 (Ga. Ct. App. 1996).

We conclude from the record that the district court did not err in granting summary judgment in favor of the defendants on Guthrie's state law claims because Waffle House is not liable for Barnett's or Lawery's alleged sexual harassment and because Lawery's conduct was not extreme and outrageous as a matter of law. It also did not err in granting summary judgment on Guthrie's negligent-retention claim because that claim is derivative of her meritless sexual- and racial-harassment claims and her intentional-infliction-of-emotional-distress claim.

## V.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Waffle House and Lawery.

**AFFIRMED.**