John THOMPSON, III, Plaintiff,

v.

**CITY OF MIAMI BEACH,
FLORIDA, Defendant.**

Case No. 13–21720–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 3, 2014.

Beresford A. Landers, Jr., Law Office of Beresford A. Landers, Jr., PLLC, North Miami, FL, for Plaintiff.

Robert F. Rosenwald, Jr., Donald Mark Papy, City of Miami Beach, Miami Beach, FL, for Defendant.

### *ORDER*

CECILIA M. ALTONAGA, District Judge.

THIS CAUSE came before the Court on Defendant, City of Miami Beach's ("City['s]") Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 33], filed October 30, 2013. The Court has carefully reviewed the parties' written submissions and applicable law.

### I. BACKGROUND [1]

Plaintiff, John Thompson, III ("Thompson"), is an African American who began working with the City as a part time employee in the City's Parks and Recreation Department in the summer of 2004, attaining full time employment in June 2008.

(*See* Am. Compl. ¶¶ 6, 9). Since June 2008, Thompson has held the position of Municipal Service Worker I, and his evaluations reflected Thompson meeting or exceeding performance expectations. (*See id.* ¶ 10). Nevertheless, since starting full time employment, Thompson has been subjected to disparate terms and conditions of employment because of his race. (*See id.* ¶ 11). He was passed over for promotion because of his race and because he filed a complaint about discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*See id.* ¶ 12). Thereafter the parties settled the matter, with the City agreeing not to discriminate or retaliate against Thompson in violation of Title VII of the Civil Rights Act of 1964. (*See id.* ¶ 13). The City has not abided by the agreement but rather has continued to discriminate and retaliate against Thompson. (*See id.* ¶ 14).

Thompson's supervisor, Derek Jenkins ("Jenkins"), informed Thompson when it was time for promotions Thompson would be the first employee the City would consider. (*See id.* ¶ 15). This was false and was part of the City's scheme to undermine its true discriminatory intent. (*See id.*). At the end of 2010, employee Charles Robinson complained that Thompson was not pulling his weight on job assignments, and Jenkins pulled Thompson outside and began aggressively berating Thompson. (*See id.* ¶ 16). Thompson found himself in a hostile situation and had to call the police against Jenkins. (*See id.*). Then Jenkins created a hostile work environment for Thompson, with several incidents occurring between the end of 2010 and February 2012. (*See id.* ¶ 17).

Jenkins gave Thompson the nickname "Radio Raheem," referring to a black character killed in the movie "Do the Right

---

1. The facts are taken from the Amended Complaint [ECF No. 30], are presented in the light most favorable to Plaintiff, and are taken as true.

Thing." (*Id.* ¶ 18). Jenkins started telling other employees "we have people going to the office and talking about things that go on from the north end … causing problems and getting lawyers," referring to Thompson. (*Id.* ¶ 19). Jenkins began riding up from north on the truck with crew in the mornings while Thompson was at shift as a form of intimidation. (*See id.* ¶ 20). Prior to the incident with Thompson Jenkins had his own truck and would join the crew at a particular location. (*See id.*). Jenkins now refers to Thompson as a snitch. (*See id.*). Jenkins commented to Thompson "Everyone on the north end crew has to tuck in their shirts and if they don't like it they can get the f*ck off his crew … f*ck it!" (*Id.* ¶ 21).

Jenkins has been making derogatory remarks about Thompson such as "the open space crew has been infiltrated by a snitch and a spy, there is a snitch on the crew be careful he's telling things to the City." (*Id.* ¶ 22). Jenkins called Thompson an "off brand ni*ger" because he was making complaints to his supervisors. (*Id.*). On one occasion following lunch Jenkins commented about Thompson, "that fuc*ing ni*ger out there in the truck with his snitching ass." (*Id.* ¶ 23). Speaking of Thompson, Jenkins also said "when they (Plaintiff) get a little position then those ni*gers sellout." (*Id.* ¶ 24). Thompson complained about Jenkins's behavior and requested to be transferred off the crew; all the while Jenkins continued his discriminatory behavior. (*See id.* ¶ 25).

In February 2009, Thompson applied for an MSW II position in the Greenspace Management Division, but although qualified, he was not promoted because of his race. (*See id.* ¶ 26). The City's reason for not promoting Thompson was that it had eliminated the position. (*See id.*). In September 2009 Thompson took the exam for an MSW II position once more, and scored the third highest in the exam behind only Alex Portuondo and Manuel Sanchez. (*See id.* ¶ 27). The latter two were not qualified for the position, Thompson was next on the list for the position, but the City did not promote Thompson giving as its reason the position had been converted to two part-time MSW II positions. (*See id.*).

Thompson has on numerous occasions performed the duties of an MSW II employee, and when an employee works out of class designation, the employee is to be paid out of class pay. (*See id.* ¶ 28). From April 2010 to the filing of his most recent EEOC complaint, Thompson worked consistently as an MSW II. (*See id.*). Other employees who worked out of class were compensated for out of class pay. (*See id.*). The City's action against Thompson was in part for Thompson filing complaints with the EEOC. (*See id.*).

Thompson filed a complaint with the EEOC on July 18, 2012, attached as exhibit A to the Complaint, and on February 15, 2013, the EEOC issued Thompson a right to sue letter attached as exhibit B to the Complaint. (*See id.* ¶ 29). On the basis of the foregoing allegations and supporting exhibits, Thompson makes two claims against the City. In Count I, titled "Racial Harassment Under Title VII and FCRA," Thompson alleges he was subjected to racial harassment and an abusive work environment, and suffered tangible "job detriment" when he was denied promotions. (*Id.* 5). In Count II, titled "Retaliation Under Title VILL [sic] and FCRA," Thompson alleges the City continues to retaliate against him "as its unlawful employment practice," and the "retaliation [consists] of failing to promote [Thompson] on two separate occasions for the position of MSW II." (*Id.* 7).

## II. LEGAL STANDARD

■■■ "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' … it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997).

## III. ANALYSIS

The City moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting it fails to state a claim upon which relief may be granted. Specifically, the City argues (1) Count I fails to state a claim because Thompson does not allege sufficient facts to support a claim of a racially hostile workplace, and (2) Count II fails to state a claim because Thompson does not establish a *prima facie* case of retaliation. (*See* Mot. 5–14). Thompson's two-page "Response" [ECF No. 39], other than citing to the standard governing motions to dismiss for failure to state a claim, contains no legal analysis whatsoever supporting the sufficiency of Thompson's claims. *See* S.D. FLA. L.R. 7.1(c) ("Each party opposing a motion shall serve an opposing memorandum of law no later than fourteen (14) days after service of the motion."); *id.* 7.1(c)(2) ("[T]he opposing memorandum of law shall [not] exceed twenty (20) pages."). The Court consequently addresses the City's arguments without the benefit of any relevant discussion by Thompson.

### A. Count I for Hostile Work Environment

■■■ To state a claim of hostile work environment, a plaintiff must allege:

(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir.2002) (citation omitted). The "severe or pervasive" re-

quirement is both objective and subjective, as the harassing "behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Id.* at 1276 (alterations, citation, and internal quotation marks omitted). In considering the harassment's objective severity, factors include: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citation omitted). The Court must be mindful, however, that "Title VII is not a general civility code, and simple teasing[,] offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment." *Guthrie v. Waffle House, Inc.,* 460 Fed.Appx. 803, 806 (11th Cir.2012) (alterations, citation, and internal quotation marks omitted).

The City challenges Thompson's ability to satisfy the fourth element, that is, that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment. (*See* Mot. 6–7). In this regard the City relies on *Barrow v. Ga. Pac. Corp.,* 144 Fed.Appx. 54 (11th Cir. 2005), to argue that much more serious factual allegations than those contained in Thompson's Complaint were found not to *allege* a racially hostile workplace. (*See* Mot. 6 (emphasis added)). In *Barrow,* decided in favor of the employer at *summary judgment,* there was evidence a superintendent called one of the plaintiffs "nigger" three times in one year, repeatedly called him "boy," and told him two or three times he was going to kick his "black ass;" a supervisor called him a "nigger" and told him if he looked at "that white girl" he would "cut" him; a different superintendent called him a "black boy" on

one occasion; and another supervisor once called him a "dumb ass." 144 Fed.Appx. at 57. In *Barrow* the employer had policies and procedures for reporting racial harassment, and it promptly remedied the offenses that came to its attention on the filing of the litigation. *See id.* Finding only "isolated, sporadic instances of racial harassment over [plaintiff's] more than fourteen years of employment," the district court properly entered summary judgment for the employer. *Id.* at 58.

As the discussion shows, *Barrow* was not decided on a motion to dismiss, but rather on a motion for summary judgment. *See Barrow,* 144 Fed.Appx. at 57–58. While *Barrow* is instructive, the Court finds the discussion in *Alhallaq v. Radha Soami Trading, LLC,* 484 Fed.Appx. 293 (11th Cir.2012), somewhat more helpful. In *Alhallaq,* the Eleventh Circuit affirmed an order dismissing a complaint for failure to allege a hostile work environment claim based on religious harassment. There, plaintiff's allegations of remarks by defendant that she was "dirty" and for her "to go to Hell" and "burn in Hell," combined with the playing of Christian gospel music, were insufficient to show they were uttered on account of plaintiff's Muslim religion. *Id.* at 296 (internal quotation marks omitted). Furthermore, plaintiff had not established the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment, for although offensive, rude, and insensitive, the remarks were not actionable under Title VII. *See id.* Title VII does not regulate mere offensive utterances or general vulgarity, and it is not a "general civility code." *Id.* (internal quotation marks omitted). Plaintiff could not "make actionable ordinary workplace tribulations by turning a 'personal feud' between herself and a coworker into a Title VII religiously hostile work environment claim." *Id.*

Here, Thompson's allegations of harassment based on a protected characteristic of the employee—race—consist of three racial slurs: Jenkins calling Thompson an "off brand ni*ger," stating "that fuc*ing ni*ger out there in the truck with his snitching ass," and commenting "when they get a little position then those ni*gers sellout." (Am. Compl. ¶¶ 22–24). In considering objective severity, the remarks fail to make out a sufficient case of harassment given how infrequently they were uttered over the many months covered by the Amended Complaint, their lack of severity, the absence of any physically threatening conduct, and the absence of any factual allegations showing the remarks unreasonably interfered with Thompson's job performance. *See Miller,* 277 F.3d at 1276.

The remaining allegations about Jenkins's boorish and rude behavior are not race-related. Indeed, they merely emphasize Jenkins needs to take classes on good manners and proper leadership skills. Again, Title VII is not a general civility code. While the three "race-based" remarks are indeed offensive, neither alone nor in combination with other rude treatment at the hands of Jenkins over a two-year period do the three comments objectively state a cause of action for racial discrimination based on hostile work environment. *See also McCann v. Tillman,* 526 F.3d 1370, 1378–79 (11th Cir.2008) (affirming summary judgment for employer on hostile work environment claim where conduct included two demeaning comments made in plaintiff's presence, and two additional racial epithets spoken outside her presence, in a period of less than three years); *cf. Freytes–Torres v. City of Sanford,* 270 Fed.Appx. 885, 890 (11th Cir. 2008) (court found objective reasonableness of perception of harassment in that "[f]rom April 2000 into July 2000, and again in late January and February 2002, Freytes–Torres was subjected to at least daily harassment from Dixon, and the sixteen months of less-than-constant harassment do not mitigate the four months where the harassment occurred on a daily basis."); *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1303–04 (11th Cir.2012) ("[T]here were seven incidents of racist acts over a year, four of which—the last two banana incidents, the Confederate clothing and what reasonably could be perceived as a threatening confrontation—occurred within a two-week period of time near the end of [plaintiff's] employment with UPSF. It is this escalation of incidents, with a possibly threatening confrontation as its centerpiece, that makes the issue of racial harassment, as that term is used in the statute, one for the trier of fact."). The Court agrees with the City that Count I fails to state a claim.

## B. Count II for Retaliation

To state a *prima facie* claim of retaliation under Title VII, a plaintiff mush allege (1) he was engaged in an activity protected under Title VII, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Entrekin v. City of Panama City Fla.,* 376 Fed.Appx. 987, 993–94 (11th Cir.2010) (citing *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir.2001)). Regarding the third element, to establish a causal connection between protected activity and an adverse employment action, a plaintiff must show "the protected activity and the adverse action are not completely unrelated." *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 978 n. 52 (11th Cir.2008) (citation and internal quotation marks omitted). A plaintiff satisfies this burden "by showing close temporal proximity between the statutorily protected activity and the adverse

employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (citation omitted). And if there is no other evidence showing causation, the temporal proximity must be "very close." *Id.* (citation and internal quotation marks omitted); *see also Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006) ("[I]n the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." (citation omitted)).

■ The City challenges the sufficiency of Thompson's retaliation claim in Count II by arguing Thompson has not alleged a materially adverse employment action and he has not alleged a causal connection. (*See* Mot. 10–14). As to the first argument, the City asserts no materially adverse action was taken against Thompson because both MSW II positions were eliminated. (*See id.* 10). The City makes this claim without citing to a single case. In truth, failure to promote may constitute a materially adverse employment action. *See Webb–Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir.2008) ("The Supreme Court has defined an adverse employment action as follows: 'A tangible employment action constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits.'" (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998))). Thompson minimally alleges the failure to promote him on two separate occasions for MSW II constitutes the adverse employment action

complained of. (*See* Am. Compl. ¶ 41 ("The retaliation of failing to promote Plaintiff on two separate occasions for the position of MSW II [sic].")). That the MSW II positions were not filled, and hence the failure to promote Thompson is not a materially adverse employment action, is an argument not supported by any authority, and the Court is not comfortable simply accepting the City's argument without more.

■ With regard to the second argument regarding the lack of a causal connection, the City asserts Thompson fails to present a *prima facie* case connecting the October 7, 2008 charge of discrimination and the February and September 2009 failures to promote him.[2] (*See* Mot. 12). First, the Court notes the date of October 7, 2008 appears nowhere in the Amended Complaint; the City refers to the date in its Motion and Thompson in his less-than-illuminating Response does not challenge that date. Thompson does refer to an "EEOC file number 510200900180" in the Amended Complaint (*id.* ¶ 14), and in the absence of any opposition by Thompson to the City's date, the Court assumes the veracity of the October 7, 2008 date in its analysis.

Thompson does not allege Jenkins influenced the decisions not to promote or that Jenkins filled the positions with others outside Thompson's protected class. The only causal link presented in the Amended Complaint between the failures to promote and protected activity is temporal proximity. That temporal proximity would be Thompson's initial charge of discrimination in October 2008 and the conduct complained of in February and September 2009. This alone is insufficient.

---

**2.** Curiously, the EEOC Charge of Discrimination attached as exhibit A to the Amended Complaint contains no references to the failures to promote constituting adverse employment actions at all.

The Eleventh Circuit has held ' "in the absence of any other evidence of causation,' a three-month proximity 'between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.'" *Boyland v. Corr. Corp. of Am.,* 390 Fed.Appx. 973, 974 (11th Cir.2010) (quoting *Drago,* 453 F.3d at 1308); *see also Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir.2004) ("If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."). If close temporal proximity is not shown, "a plaintiff may be able to establish causation where intervening retaliatory acts commenced shortly after the plaintiff engaged in a protected activity." *Id.* at 974–75 (citation omitted). More than three months elapsed between October 2008 and February and September 2009. Furthermore, the other retaliatory acts complained of in the Amended Complaint cover the period "[f]rom the end of 2010 through February 2012" (Am. Compl. ¶ 17), failing to qualify as intervening retaliatory acts commenced shortly after October 2008. The adverse employment actions and retaliatory acts are too far removed from Thompson's protected activity of filing a discrimination charge on October 7, 2008 to sustain the causal connection element of the Title VII retaliation claim. Consequently, Count II fails to state a claim.

## IV. CONCLUSION

For the foregoing reasons, it is

 **ORDERED AND ADJUDGED** that Defendant, City of Miami Beach's Motion to Dismiss Plaintiff's Amended Complaint **[ECF No. 33]** is **GRANTED.** In the City's first motion to dismiss [ECF No. 21] addressing Thompson's second Complaint[3] [ECF No. 14], the City raised the identical arguments regarding the insufficiency of Counts I and II. (*Compare* Mot. to Dismiss [ECF No. 21] *with* Mot. to Dismiss [ECF No. 33] ). "Ordinarily, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend should be freely given." *Dysart v. BankTrust,* 516 Fed.Appx. 861, 865 (11th Cir.2013) (alteration, citations, and internal quotation marks omitted). Nevertheless, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Id.* (citation and internal quotation marks omitted); *see also Irwin v. Miami–Dade Cnty. Pub. Sch.,* No. 06–23029–Civ, 2008 WL 2397622, at *2 (S.D.Fla. June 10, 2008) ("Where repleading would be futile, however, dismissal with prejudice is appropriate." (citations omitted)). "Denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Dysart,* 516 Fed.Appx. at 865 (alteration, citation, and internal quotation marks omitted). The Court has already permitted Thompson a second opportunity to sufficiently state his claims in light of the same arguments, and any further attempts would be futile as the circumstances of Thompson's case plainly do not entitle him to relief. In addition, the deadline for amending pleadings passed on November 26, 2013 (*see* Scheduling Order 1 [ECF No. 26] ). The case is therefore **DISMISSED.**

---

**3.** The Court previously dismissed the case due to Thompson's failure to pay the filing fee (*see* Order [ECF No. 5] ) and thereafter reinstated (*see* Order [ECF No. 7] ) the case following Thompson's motion requesting relief from dismissal [ECF No. 6]. Upon the re-opening of the case, Thompson re-filed his initial Complaint [ECF No. 1], titled as an Amended Complaint [ECF No. 14].